UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-20568-CR-UNGARO/O'SULLIVAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GASSNO RONARD OWENS,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court on the defendant Gassno Ronard Owens' Motion to Suppress Physical Evidence and Incorporated Memorandum of Law (DE# 22, 11/26/07). This motion was referred to United States Magistrate Judge John J. O'Sullivan by the Honorable Ursula Ungaro, United States District Court Judge for the Southern District of Florida. Having presided over an evidentiary hearing and carefully considered the defendant's motion, the government's response, the exhibits, the court file and applicable law, the undersigned respectfully recommends that defendant Gassno Ronard Owens' Motion to Suppress Physical Evidence and Incorporated Memorandum of Law (DE# 22, 11/26/07) be **GRANTED**.

## BACKGROUND

The defendant, Gassno Ronard Owens, is charged with possession of a firearm and ammunition by a convicted felon (Count I), possession with intent to distribute cocaine base (Count II), possession with intent to distribute cocaine (Count III), possession with intent to distribute marijuana (Count IV) and possession of a firearm in

furtherance of a drug trafficking crime (Count V). See Indictment (DE # 1, 7/20/07).

On November 26, 2007, the defendant filed the instant Motion to Suppress Physical Evidence and Incorporated Memorandum of Law (DE# 22). On December 10, 2007, the government filed Government's Response to Defendant's Motion to Suppress Evidence (DE# 25).

On December 14, 2007, the undersigned held an evidentiary hearing on the instant motion. Government's Exhibits 1 through 5 and Defendant's Exhibits 1 through 5 were admitted into evidence. Miami-Dade Police Officer Carl Rousseau testified on behalf of the government. The defendant presented testimony from Commander Ana Gispert of the Miami-Dade Police Department's Systems Development Bureau and Bosco Guzman, an investigator with the Federal Public Defender's Office.

## **FACTS**

The government presented the following evidence during the suppression hearing. On September 7, 2006, Miami-Dade Police Officer Carl Rousseau was on duty in a marked police vehicle when he received a "be on the lookout" notice or "BOLO" over police radio for a strong armed robbery suspect. The strong armed robbery had just occurred on 87th Street and Northwest 27th Avenue in Miami-Dade County. The BOLO described the strong armed robbery suspect as a black heavy-set male with dreadlocks. The suspect was reported fleeing southbound in a gold 2004 Chevy Impala.

Shortly after the BOLO was issued, Officer Rousseau observed a vehicle and driver matching the description of the BOLO at 54th Street and Northwest 27th Avenue, south of where the strong armed robbery occurred. The defendant was the driver of that vehicle. Officer Rousseau and his police squad proceeded to stop the defendant. Officer

Rousseau through the loudspeaker of his vehicle gave verbal commands to the defendant to place his hands where Officer Rousseau could see them. Officer Rousseau, while still in his vehicle, observed the defendant initially lean forward and from the defendant's body movements Officer Rousseau believed the defendant was attempting to either retrieve or conceal something under the driver's seat. The defendant subsequently obeyed Officer Rousseau's command and placed his hands on the steering wheel.

As the defendant got out of his vehicle, Officer Rousseau observed a bulge in the defendant's front right pocket.  Officer Rousseau leaned the defendant against the defendant's vehicle and frisked the defendant. Officer Rousseau felt the bulge in the defendant's pocket. Officer Rousseau did not know what the bulge was. From the frisk, Officer Rousseau determined it was not a gun. He took the bulge out of the defendant's pocket to make sure it did not contain any weapons. Officer Rousseau retrieved a large plastic sandwich bag containing marijuana and crack cocaine from the defendant's pocket.

The defendant was taken into custody and Officer Rousseau searched the defendant's vehicle. During this search, Officer Rousseau observed the handle of a handgun underneath the driver's seat. Officer Rousseau did not find any items that were stolen in the strong armed robbery in the defendant's vehicle.

During cross-examination, Officer Rousseau testified to the following facts. Officer Rousseau drove the defendant to the police station. Officer Rousseau believed he read the defendant his <u>Miranda</u> rights but did not ask the defendant any questions concerning the strong armed robbery. The defendant did not make any spontaneous statements

3

concerning the strong armed robbery.

Officer Rousseau did not obtain a police incident report number for the strong armed robbery. He did not know if a case number was ever assigned to the strong armed robbery. He did not contact the officer who initiated the BOLO. Officer Rousseau did not go to the scene of the strong armed robbery or take the defendant there. He did not do a "show up" with the defendant or otherwise have the victim of the strong armed robbery identify the defendant.  Officer Rousseau testified that the BOLO was issued by a police dispatcher.

**2.    Grid Run Reports**

The defendant presented evidence regarding the lack of any corroborating evidence concerning the issuance of the subject BOLO. The Miami-Dade Police Department maintains a database of reported crimes. The police department produces "grid run reports" which show any calls for service or crimes reported within a half mile area. The information shown on the grid run reports are obtained from a repository database. The repository database includes all 911 calls for service and self-initiated calls by an officer. For instance, if an officer calls dispatch and the dispatcher or communications person enters the call into the system, it would show up on the corresponding grid run report. The subject BOLO was issued by a dispatcher. The grid run reports do not depict officer-to-officer calls.

The strong armed robbery reported in the BOLO occurred in an area intercepted by four grids.[1]  The police code for a robbery is signal 29. There were no signal 29s

---

[1] The grid run reports depicting the area where the strong-armed robbery occurred were admitted as "Defendant's Exhibit 1."

reported in the four grids for September 7, 2006. There were four reports that showed incidents that occurred either at the location of the strong armed robbery or at a different nearby location but at the same approximate time as the strong armed robbery. The government stipulated that none of the reports involved the defendant or the strong armed robbery that was the subject of the BOLO.

## ANALYSIS

An investigative stop does not require probable cause. See Terry v. Ohio, 392 U.S. 1, 21 (1968). An investigative stop meets constitutional standards if the officer had a reasonable suspicion of criminal activity, based on articulable and specific facts known to him when the stop occurred. United States v. Thompson, 712 F.2d 1356, 1361 (11th Cir. 1983). Reasonable suspicion is determined from the totality of the circumstances, United States v. Sokolow, 490 U.S. 1 (1989), and from the collective knowledge of the officers involved in the stop. United States v. Cotton, 721 U.S. 350, 352 (11th Cir. 1983) cert. den. 465 U.S. 1108 (1984). Although this standard is considerably less demanding than probable cause, the Fourth Amendment nevertheless requires that the police officers articulate facts which provide some minimal, objective justification for the stop. Sokolow, 109 U.S. at 1585. Such facts may be derived from "various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers." United States v. Cortez, 449 U.S. 411, 418 (1981). The government has the burden of proving reasonable suspicion and probable cause by a preponderance of the evidence. United States v. Salzano, 158 F.3d 1107, 1115 (10th Cir. 1998); United States v. Matlock, 415 U.S. 164, 177-78 n.14 (1974).

**1.     Investigative Stop**

The defendant argues that Officer Rousseau did not have reasonable suspicion to initiate the stop because the defendant was not engaged in any criminal activity prior to the stop and Officer Rousseau did not sufficiently corroborate the strong armed robbery tip. See Defendant's Motion to Suppress Physical Evidence and Incorporated Memorandum of Law (DE# 22 at 5, 11/26/2007).[2]  It is well settled that "an anonymous tip can, under certain circumstances, give rise to reasonable suspicion, as long as the information provided contains 'sufficient indicia of reliability to justify the investigatory stop.'" United States v. Heard, 367 F.3d 1275, 1278 (11th Cir.2004), cert. denied 543 U.S. 913 (2004), (citing Alabama v. White, 496 U.S. 325, 330 (1990)). "To have reasonable suspicion based on an anonymous tip, the tip must 'be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.'" United States v. Lindsey, 482 F.3d 1285, 1291 (11th Cir. 2007) citing Florida v. J.L., 592 U.S. 266, 272 (2000). "The issue is whether the tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide sufficient suspicion to make the investigatory stop." Id. citing Alabama v. White, 496 U.S. 325 (1990).

According to Officer Rousseau, he spotted the defendant shortly after the BOLO was issued. The BOLO reported that the strong armed robbery suspect was fleeing south. Officer Rousseau spotted the defendant in an area south of where the strong armed robbery allegedly occurred. The defendant matched the description of the

---

[2] At the suppression hearing, defense counsel conceded that if the BOLO existed, the BOLO would have provided Officer Rousseau with reasonable suspicion to stop the defendant.

suspect of the purported BOLO: a black heavy-set male with dreadlocks. The defendant was driving a gold 2004 Chevy Impala, the same make, model, year and color as the vehicle reported in the BOLO. Thus, the BOLO had sufficient indicia of reliability to provide Officer Rousseau with reasonable suspicion to stop the defendant.

Generally the corroboration of innocent details, without more, is insufficient to support the reliability of an anonymous tip. See Florida v. J.L., 529 U.S. 266, 268 (2000). In J.L., the Supreme Court held that an anonymous tip indicating that a "young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun," without more, was unreliable and therefore insufficient to justify a police officer's stop and frisk of the defendant. In the instant case, Officer Rousseau corroborated more than just the physical appearance of the defendant. Prior to stopping the defendant, Officer Rousseau corroborated the defendant's physical description, the exact make, model and year of the vehicle described in the BOLO and the direction the vehicle was traveling in. The short time between issuance of the BOLO and Officer Rousseau spotting the defendant is also significant. These corroborating details together with the totality of the circumstances would have provided Officer Rousseau with sufficient justification to make the stop.

The defendant raises serious doubt as to whether the BOLO was ever broadcast over the police radio and the government has failed to allay these concerns. There is no record of the BOLO. The BOLO did not appear on the grid run reports for the subject date. Although Officer Rousseau drove the defendant to the police station and believed he read the defendant his Miranda rights, he did not ask the defendant any questions concerning the strong armed robbery. Officer Rousseau did not follow up with the officer

7

investigating the strong armed robbery. He did not take the defendant to the scene of the strong armed robbery or arrange for the victim of the strong armed robbery to identify the defendant. Officer Rousseau's failure to pursue the strong armed robbery investigation raises concern about the existence of the BOLO. Nonetheless, because the undersigned finds that the defendant's motion to suppress should be granted because Officer Rousseau did not have probable cause to seize the drugs in the defendant's pocket, the undersigned will not recommend suppression based on the alleged fabrication of the BOLO.

### 2.      Protective Search

Assuming that the alleged BOLO was broadcast as described by Officer Rousseau, Officer Rousseau was justified in conducting a protective search for weapons. It is well settled that "[a]n officer who has a reasonable suspicion that an individual is engaged in illegal activity and is armed with a concealed weapon is justified in conducting a limited search for weapons." United States v. Hunter, 291 F.3d 1302, 1307 (11th Cir. 2002) citing Terry, 392 U.S. at 24. "Once an officer has legitimately stopped an individual, the officer can frisk the individual so long as 'a reasonably prudent man in the circumstances would be warranted in the believe that his safety or that of others was in danger.'" Hunter, 291 F.3d at 1306 (11th Cir. 2002) citing Terry, 392 U.S. at 27.

The defendant argues that Officer Rousseau had no reasonable suspicion to frisk the defendant. The defendant notes that the BOLO was for a strong armed robbery which did not involve weapons. The undersigned disagrees. Officer Rousseau works in a high crime area. Officer Rousseau knew the defendant had initially leaned forward when

he told the defendant to put his hands where he could see them. It appeared to Officer Rousseau that the defendant had either attempted to conceal or grab an object from under the driver's seat. When the defendant exited the vehicle, he had a bulge in his front pocket. The defendant's prior movements coupled with the bulge in the defendant's pocket provided Officer Rousseau with ample justification to frisk the defendant for weapons. See Hunter, 291 F.3d at 1307 (noting that "[i]f reasonable suspicion supports a Terry stop, the officer's observation of a bulge under a defendant's shirt at the waist warrants a pat-down for weapons to ensure the officer's safety.").

Although Officer Rousseau was justified in frisking the defendant, Officer Rousseau exceeded the scope of a Terry protective search for weapons when he removed the bulge from the defendant's pocket. At that time, Officer Rousseau did not know what the bulge was and did not have probable cause to seize the contents of the defendant's pocket. From the frisk, Officer Rousseau was able to determine that the bulge was not a gun. Officer Rousseau did not state he believed the bulge in the defendant's pocket was a weapon or contraband.[3] Officer Rousseau violated the Fourth Amendment when he removed the bulge from the defendant's pocket. See United States v. Ponce, 8 F.3d 989, 999 (5th Cir.1993) (stating, in dicta, that absent consent, the removal of an object from the defendant's pocket would have been impermissible under Minnesota v. Dickerson, 508 U.S. 366, 373 (1993) because the "[officer]'s

---

[3] Although Officer Rousseau testified that he removed the bulge from the defendant's pocket to make sure there were no weapons, he did not know or suspect that the bulge contained weapons. Officer Rousseau removed the bulge from the defendant's pocket to determine its contents. The Fourth Amendment requires that an officer have probable cause to believe that an item is contraband before seizing it. Minnesota v. Dickerson, 508 U.S. 366, 376 (1993).

speculation about what the bump might be [was] insufficient to justify his seizure of the contents of [the defendant's] watch pocket.").

In United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007), the Eleventh Circuit affirmed an order denying a motion to suppress where an officer, after frisking the defendant, removed an object from the defendant's pocket believing the object might be a weapon. "[The officer] continued his search only because he thought the long, thin object in [the defendant's] pocket might be a screwdriver or something similar that could be used as a weapon." Id. at 743 (emphasis added). The Eleventh Circuit concluded that under those circumstances, "[the officer] was entitled to ensure his safety by searching [the defendant's] pocket after his initial pat-down supplied reason to believe that the item concealed might be a weapon." Id. at 744 (emphasis added).

Unlike the officer in Clay, Officer Rousseau did not articulate any concern that the object in the defendant's pocket was a weapon or contraband after frisking the defendant. "[W]hen I was patting him down[,] I didn't know what it was, I wasn't sure what it was." See Suppression Hearing Transcript at 31. Officer Rousseau's failure to state any reason for suspecting that the bulge in the defendant's pocket was a weapon or contraband made the removal of the object impermissible under Terry. See United States v. Campbell, 178 F.3d 345, (5th Cir. 1999) (affirming order denying motion to suppress where officer "testified that he thought the large bulge in [the defendant's] pocket 'was some type of weapon.'"); United States v. Maldonado, 42 F.3d 906, 909 (5th Cir. 1995) (affirming order denying motion to suppress where officer removed bulge from defendant's boot because he suspected the bulge was a weapon).

10

The government argues that "police are not limited to seizing a weapon if it is apparent that the suspect is in possession of contraband." See Government's Response to Defendant's Motion to Suppress Evidence (DE# 25 at 5, 12/10/07). However, Officer Rousseau did not testify that he believed the bulge was contraband. He testified that, after feeling the bulge, he did not know what the bulge was.[4] Officer Rousseau realized the bulge was contraband only after removing the bulge from the defendant's pocket. Officer Rousseau offered no explanation for his seizure of the contents of the defendant's pocket other than the need to determine if there were any weapons in the defendant's pocket. Officer Rousseau did not provide any facts to support a belief that the defendant's pocket contained a weapon or contraband. Accordingly, Officer Rousseau's removal of the bulge from the defendant's pocket violated the Fourth Amendment. See Dickerson, 508 U.S. at 373.

Because the undersigned finds that Officer Rousseau's removal of the bulge from the defendant's person exceeded the scope of a Terry protective search, the undersigned finds that the search of the defendant's vehicle incident to the defendant's arrest was also unlawful. Wong Sun v. United States, 371 U.S. 471 (1963). In light of the exclusionary rule, the undersigned respectfully recommends that the drugs retrieved from the defendant's person and the gun retrieved from the defendant's vehicle be suppressed.

---

[4] A picture (Government's Exhibit 3) of the bag seized from the defendant was introduced during the hearing. The picture reveals a baggy with what appears to be marijuana and small envelopes containing crack cocaine.

**RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that defendant Gassno Ronard Owens' Motion to Suppress Physical Evidence and Incorporated Memorandum of Law (DE# 22, 11/26/07) be **GRANTED**. Pursuant to 28 U.S.C. § 6363(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Ursula Ungaro within ten (10) days of receipt of a copy of this Report and Recommendation. See Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982).

RESPECTFULLY SUBMITTED in Chambers, at Miami, Florida, this **15th** day of January, 2008.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
United States District Judge Ungaro
All counsel of record